The next case on our calendar for argument this morning is No. 21-187, United States v. Nosov. I may be pronouncing that incorrectly, Mr. Langone. Hello. Good morning, everyone. Richard Langone for the appellant. Mr. Nosov. Alexander Nosov. You'll have to speak a little bit louder. Yes, Your Honor. I could hear everybody else, but I'm not hearing you well. Can you hear me now, Judge? Yes. Okay. Okay. I apologize. Richard Langone for Mr. Nosov. I'd like to begin, this legislation, the First Step Act, and this notion that we're dealing with compassionate relief is so essential, it's, first of all, it's remedial legislation, so it's respectfully submitted that it should be construed liberally with, to effectuate its congressional intention. You know, I want to just as an out, state that hope is really important for persons serving life sentences. I'm dealing with a lot of these cases where young, basically children, are being sentenced to die in prison. And the First Step Act is- Your client was 20 years old at the time of the murders, isn't that right? He was 20 years old, an immature judge. He came from a broken home. He was here running the- All this goes to the merits of a decision. And we have many, many cases on the merits of a decision that tend to go against you. The thing that interests me about this case is whether it is appropriate, whether there's reason to think that the district court somehow got mixed up on what it was doing, both because it used one incorrect word, and because it said that there were no extraordinary circumstances when in fact the government had conceded that these were. And therefore, 2535.3 didn't apply, rather than saying they were there and those. So my question is, is there some doubt about what the district court would do if it got things right, rather than not? The ultimate merits of the thing have been argued too many times for you to get too far with me anyway. I understand that, Your Honor. But so what I would start with, judges, in United States v. when this court in 736 F.3.D., page 196, speaks about the weight of the evidence standard, the standard to weigh in terms of what establishes arbitrary and capricious. And it says that the district court must provide, the record must contain enough explanation on how it exercised its sentencing discretion to permit meaningful appellate review. Respectfully, there is no basis upon which to even infer any weight that was placed on any of the allegations or any of the positions made because the court was just summarily denied it. Mr. Langone, haven't we said that a lesser standard applies on a motion under 3582 than the statutorily imposed obligation under 3583 to provide a sufficient explanation of reasons? And, you know, I understand the presumption of regularity, Your Honor, and the need to dispense with that. Again, when you think about the interest at stake, the hope of the life sentences and what it entails. Let me just say that where you have a situation that I have here, I have a case, this case here. This man is convicted on the testimony of an informant who was who wasn't present at the time of the crime, who was relaying information that someone who was there, Irma Chin, was there who supposedly telling Spachinko. But all of these things go to things that you raised in habeas. The question before us is, are those doubts, is his age, which is too great to be covered by Miller, but still may be relevant. Are these things that a district court taking into account can decide one way or another under the compassionate release? And so the real question is, did the district court, in fact, take these things into account, given that we don't require too much of a statement, but we do require something. And the standard, if I could follow up on Judge Calabresi, the standard also is in all the circumstances. Judge Hellerstein provided a lengthy discussion that Mr. Nosov's claim in his 2011 denial of 2255. So he's already demonstrated intimate familiarity with the record in this case. And so this is somewhat different than if this were a new judge, brand new to the situation, not having ruled on the case before. And in the absence of we have several different habeas and rule 33 decisions, this has been explored extensively before now. Judge Hellerstein recited that he's reviewed the submissions from the defendant and the government considered the proper factors under 3553A. And he finds that the defendant has not shown extenuating or extraordinary and compelling circumstances or reasons warranting a reduction. I don't understand how on this record that isn't enough from which to infer what he was on, what basis he was denying reduction in sentence. OK, so so the fact of the matter is, is that when he was reviewing no goes man's statements in support of of of the earlier motion, the judge was considering those statements in terms of whether a juror would it would have made an impact on a rational juror to acquit. I think that that was that's not the focus of what the the what goes man had said in my office to me about the about what actually happened at the time of the crime. And that information is is is completely at odds with what the government has represented throughout this case as to what Mr. Nosov's involvement in this case was really kind of it was it was absent because we never had anyone testify with personal knowledge at the trial on this matter. So so, you know, all the inferences were against Mr. Nosov and they were inferences that could fairly be derived from an incomplete record. I'm saying that the record does not fairly represent the facts. It doesn't show the the full story of what happened here. The court never heard the full story, what happened here. And Mr. Nosov, Mr. Gosman's affidavits, whether even if there is some conflict with earlier things that he said, create a question of fact that you would say to yourself, wow, you know, if if if if it were true. What counsel, what is it that you want us to do? I would like you want us to say that he was wrong on the merits. I'd like to know you're saying he didn't weigh things correctly and that's a little difficult for us. Or are you saying he we don't know enough to see what he did, which isn't that you're saying? Well, that's what that is, what I'm saying, Judge. We really don't know enough about what the judge what was in the judge's mind and what he did. What I'm saying is that's very different from the bulk of your argument before. Well, I don't think they're necessarily inconsistent positions. They may be contradictory positions, although maybe not contradictory. They're just different. They're different, Your Honor. You know, I am not sure, Judge. It's a black hole. I mean, I'm intuiting things because I have such a terse decision that gives me no guidance and gives this man who's sentenced to die in prison no real insight, despite tremendous efforts. And I think that the fact that there was in the in the in specifically in the this the point to which was that it should have been a murder. We're asking for this to be a murder to conviction so that he could sentence to a number of years instead of life. That that whole point was a focus on on Guzman and what he had said in his affidavit. Mr. Langone, and you're familiar with the Supreme Court's decision in Chavez Mesa, right? Yes. In 2018, that said, in the context of reduct motion for reduction in sentence, there's a lesser burden on the court to provide an explanation. It's a it's a different aspect and a moment in the proceedings. Yes. Isn't that right? I do. But but in that case, Your Honor, again, I think I said it in the brief. That case, the didn't he the district court judge granted the guy relief. OK, and then he then he won. He was so it was the question was there was the guidelines range had moved down and the petitioner was saying that there was not a proportional reduction in the resentencing that occurred. And the Supreme Court said you don't have to have proportional resentencing. There was enough to infer from the record that the district court took the proper considerations into account and we're not going to require an extensive explanation in these circumstances. Yes. And the district court in that case was the district court who tried the case. My understanding is the district court in that case had granted him some relief and he was asking for a motion for explaining. Yeah. Well, you have two minutes of rebuttal. We'll hear from the government. Thank you. Thank you. Good morning. Good morning. And may it please the court. My name is Kristi Slavic and I represent the United States in this appeal, as I did in the motion for sentence reduction proceeding in the district court. In 2003, the defendant was sentenced to life imprisonment on each of three counts of conviction for his role in the kidnapping and murder of an innocent victim. Excuse me, just one second. Mr. Langone, would you mind blacking out your video so we can focus on the Slavic? Oh, I'm sorry. Yes. That's OK. Thank you. The defendant's role included shooting the victim, participating in transporting the victim to New Jersey while the victim pleaded for his life and helping bury the victim in the backyard. All of that is very well and has been discussed. My question is a very simple one. Judge Hellerstein said that he looked at 3553 and concluded that there were not extenuating circumstances. He should have said extraordinary circumstances and so on. But you conceded that there were extraordinary circumstances. So wasn't there a mix up here? That is, shouldn't he have said there were extraordinary circumstances that was conceded? His age, you know, the health, the chaplains, whatever set of things made for extraordinary circumstances, which the government conceded were there. Nonetheless, after looking at 3553, I deny he didn't do that. And that puzzles me, because when a district judge says something briefly, I'm very ready to assume that he thought more about it. But when he says something that is technically incorrect, then I wonder whether with all the work that he has to do, she has to do, they've really considered the issue. And that's what's puzzling me about this case. I mean, did Judge Hellerstein really look at the things that you're now telling us could justify the result? I have no doubt that they could justify the result. My question is, did Judge Hellerstein, can we say sufficiently clearly that Judge Hellerstein did that so that we should affirm rather than sending it back and say, tell us what you did, what you want us to do? Your Honor, I think the answer is yes. And let's start by looking at what the district court did. The order in this case, in the order, Judge Hellerstein recounted the procedural history of this case. He reviewed the party's submissions and arguments. He cited the statutory standard, and he found that that statutory standard had not been met. Now, as Your Honor points out, the government did concede extraordinary and compelling reasons in its brief below. That was based on the defendant's body mass index at the time of filing. However, I do note that the defendant himself did not make that argument, and the district court is required to make its own determination. Whether the government concedes that point or not is not dispositive with respect to the district court's independent determination. As Your Honor noted earlier, the standard under the Chavez-Meza opinion from the Supreme Court, the requirement under Chavez-Meza is that the district judge consider the party's arguments. Chavez-Meza emphasized greatly that it was the same judge who had done the sentencing, but you suggest, or at least could suggest that it doesn't matter here if it was a district, different judge, because Judge Hellerstein had been on the case for the last 10 years and had handled the habeas, is that the point? That's right, Your Honor. Judge Hellerstein has had this case for over a decade. And in 2011, Judge Hellerstein decided the defendant's habeas petition, and in doing so, became familiar with the procedural history of the case, which, of course, included the defendant making some of the same arguments that he made on the motion for sentence reduction in other contexts, and this context also included the judge being familiar with the facts adduced at trial. And that, of course, shows the shooting, the defendant's participating in the shooting, his transportation of the victim to New Jersey, his burying the body, all of these things. Can I ask, though, one of the things that strikes me about Chavez-Meza, Pena, Christie, all of these cases deal with 3582C2, right? They're sentence reduction on account of a change, essentially, in the effective guidelines range or statutory range, given the Fair Sentencing Act. This is a compassionate release motion. And so one of the things I'm trying to figure out is all of those cases reaffirmed the principle that the court has to give some explanation. We have to be able to discern the basis. And in those cases, because the issue in front of the court was sort of sentencing, now there's a new range. Are you going to change it? You could easily draw a line between the trial court's statements at the time of sentencing and the decision here. But now, by definition, compassionate releases sort of stuff has changed. New things have come to light that should cause us to revisit this. I don't understand how we can infer, based on a court's past experience with the case, how the court is responding to the claim to new things that have changed if the court doesn't tell us. Your Honor, I think that what the district court in this case set out in his order is that he reviewed each of the arguments that the defendant made in his motion for sentence reduction, recounted each of those, and then cited the statutory standard and found that the statutory standard had not been met. So, Your Honor, He therefore concluded something that didn't follow from that. And that's, again, what puzzles me. I mean, if he had said independently, I reject the government's notion that extraordinary circumstances were here. That would be one thing. And or if he had said, I accept it and look at 355-3 standards and all things considered, I then deny it. But what he did was peculiar. Your Honor, I'm not sure that that's required. I'm not sure that him specifically setting out whether he agreed or disagreed. It's not a question of what specifically is required. A question is whether we can reasonably say we can be sure that he has done what it is that a district judge must do in these difficult cases. And district judges are very busy. They have an awful lot to do. And sometimes they may move too fast. That's the question that I'm asking of just Under the Chavez-Mesa standard, as long as the record as a whole satisfies the reviewing court that the judge considered the party's arguments and had a reasoned basis for exercising his own legal decision making authority, the district judge has provided sufficient grounds for appellate review. Now, of course, in the Chavez-Mesa case, that case involved a form, a form order that certified that the judge in that case had considered the defendant's motion and had taken into account the 3553-A factors and the relevant policy statements. In this case, Judge Hellerstein's order actually went above and beyond that Chavez-Mesa standard. He detailed the arguments advanced by the defendant and cited the statutory language in deciding that the defendant had not met that statutory standard. The Supreme Court has signed off on on very brief orders like this order in Chavez-Mesa and other courts, including this court, has agreed. So, Your Honor, the government respectfully submits that this Chavez-Mesa standard has been met here and accordingly the district court's decision should be affirmed. Are you suggesting the Chavez-Mesa standard is that a checkbox is generally okay, or is it that it's not necessarily sufficient and you have to really look at the facts of a particular case to discern whether, from the record as a whole, you can satisfy yourself that the trial judge exercised a reasoned judgment? Your Honor, the Chavez-Mesa case, I think, stands for, in part, the proposition that how much explanation depends on the case itself. And the Chavez-Mesa, there was more than just a check, a checked mark. There was language to the effect of the judge had certified, the judge had considered the defendant's arguments and had taken into account the 3553-A factors and the relevant policy statements, as opposed to the Christie case from this circuit, where it was just a checkmark and there was no case-specific language. In Christie, that was not sufficient. So, in this case, one of the arguments is, one of the key government witnesses that underlay my conviction in the first place, or maybe wasn't a key, but we've got new evidence that's come forward from somebody who was right there at the time and is saying, X, Y, Z. The court doesn't even recount that that's part of the case. The court says, I find no basis. How big a burden is it for the court to say, I don't find that additional testimony changes the scenario enough to, in other words, we don't know that the court went through that process because it didn't tell us? Well, Your Honor, that argument was made by the defendant in his submission. And Judge Hellerstein said that he considered the party's submissions. He recounted each argument and said that he had considered the party's arguments. And on that basis, he found that the statutory standard for reduction in sentence had not been met. So we know that the judge considered the arguments because the judge said, I considered the arguments and that's enough. Under the Chavez-Meza standard, yes, that's enough. Given the circumstances of this case. Yes, that's right. All right. We'll hear rebuttal. Thank you very much, Ms. Labick. Mr. Langone? Yes, Your Honor. Yes, Your Honors. I'd like to, at the outset, just note that the government's rendition of the facts now conflicts in terms of what Mr. Nosov did during this crime, conflicts with the affidavit that Guzman states. Now, the government would love to keep it in that scenario so we don't we don't look at the new evidence, as Your Honors have been just talking about. The past experience, yes, it probably did impact Judge Hellerstein's view of this case because the guy lied. He presented false, he tried to present the false alibi and that was wrong. And this judge is probably... Including recently, including up till age 38, right? I know, Judge. I'm not, I can't make that right. I can't make that right and I'm not trying to, Your Honor. But what I'm saying is the truth still matters. The truth, you know, desperation will make people do desperate things. He's dying. He's going to be sentenced to die in prison. I'm making it right. I'm not justifying it. But it's reality. And I'm sorry that he did that. And he's sorry he did that. And he knows that may have caused a lot of this problem that he's having that Judge Hellerstein just finds that he's got a complete lack of credibility. But Guzman's affidavit is very specific. He's been a government informant. He's testified numerous times for the government and they've loved them each time. But now they want to completely avoid what he's got to say as if it's irrelevant. In Brooker, the court held that age is a factor to find for compassionate release. Injustice of a lengthy sentence is a factor and the coronavirus is a factor. But injustice of a lengthy sentence, that's a granular kind of analysis that requires looking at such things as the proportionality to co-defendants, how they were treated, as to how Nosov was treated. That requires looking at, well, there are new facts in the case that mitigate, that put Mr. Nosov's involvement in a different light. In other words, kind of like. But the district judges have tremendous discretion in these cases, don't they? They do, Your Honor. But fundamental fairness has always got to be an overlay to the due process analysis here, Your Honor. And with all due respect, he didn't get a, he's not having a fair shake at this one opportunity. And, you know, Brooker was very broad with respect to the only statutory limit on what a court may consider to be sufficient. I think that alone is not sufficient. All right, Mr. Langone, I think we have the arguments and we have your papers. I appreciate your arguments. Thank you both for your arguments. We'll reserve decision. Thank you. Thank you.